Good morning. Good morning. Good morning. All right. Good to see everyone and hope all is well. And we will begin with case number one. 23-2397 and 23-2398 Carl Culp v. Steve Reed Good morning. Good morning. Good morning. Be sure and watch the clock. All right. Okay. I will. Good morning, everyone. And that's a message for everyone, please, in the courtroom. Thank you. Good morning, everyone. May it please the court. I'm Jeanette Sirisi and I'm here representing Carl and Roberta Culp. Carl is a person who is a double paraplegic amputee suffering from obesity, depression and PTSD. Carl believes the ADA applies to him and Carl believes the ADA applies to the 2018 encounter he had with the police. Carl is appealing the trial court's order granting defendants summary judgment on his ADA claim. To that extent, it's important to note that the defendants in their opening summary judgment briefs did not argue that the ADA does not apply to police encounters, did not argue that vicarious liability is not a way to assess fault under the ADA, and did not address plaintiff's claims that the entities themselves discriminated against Carl. Ms. Sirisi, forgive me, but with respect to the ADA and the Rehabilitation Act claims, you assert that the wrongful arrest theory does not apply here and you have relied only on the accommodations theory. Was any accommodation requested relating to his ability to exit the vehicle? And why would the officers think any was needed, given their observation that he was able to stand up from a sitting position in the wheelchair, place the wheelchair in the trunk, walk to the vehicle door, and sit without any help? Well, so, Your Honor, this is a summary judgment standard and so our facts are the facts that rule the day. And Carl's testimony is that he is a nearly 300-pound man that slowly got up out of his wheelchair, teetered alongside of his car, and barely made it to his seat before the officers put his hands on him. And it is exceedingly difficult for him to get out of his wheelchair. As far as a request for accommodation, there's cases where it's said that if the accommodation is obviously needed, that there should be an accommodation made. But we did make one request when he was on the ground or what I would construe as a request is when he said, my legs aren't supposed to be getting wet. So, the request there was to put the prosthetic devices in the car or in the trunk or something? Well, anything. Put some tarps over him, help him in the building, do anything, any reasonable accommodation to get his legs out of the rain and water. One point that Judge Lee observed is that unfortunately it was pouring rain that day, right? So they, through no fault of course of his own, the legs, they were already wet. Taking a short transition to his car, to get in his car, is far different than being left in the pooling water on the ground for 20 minutes. What is your evidence that the actions of the police were related to Mr. Culp's disability? The only connection that I noted was the statement by the officer for him to comply and that they did not want to be a handicapped man. And what that does is, I would think, at best establish their awareness of his disability. But that was not an issue because it is undisputed that they saw him when he was in a wheelchair near his car and, as I noted a few minutes ago, saw him put on his prosthetic leg, stand, place his wheelchair in the trunk, walk around the car to the door, and ignoring their request to stop and talk, enter the car. So in other words, what we have is officers who are aware of his disability but were also aware that he was capable of walking, lifting, sitting. And, you know, when he refused the officer's commands to cooperate, Carl's wife asked him why he did not get out of the car. So that must have made it clear that to the officers that he was capable of doing so and that the obstacle was not any physical limitation of his disability. Well, the thing about this is Carl's wife also testified or put in her affidavit that she knows that it's exceedingly difficult for him to get out of the car. And perhaps the reason she asked him why don't you get out of the car was simply because she was scared. These are issues for the jury to look at and weigh against each other. These are competing facts that we have on this record. And on summary judgment, our facts are to get credited here. The direct animus here is from our side of the story, he was not even yet refusing commands. All that had been said is may we speak to you? He said no thank you. That's not a command. Any citizen free on the street is allowed to say no thank you to a police officer's request to speak to him. He gets one leg in the car and he's got hands on him as our facts and they say we don't want to beat the A of a handicapped man at least twice. And so then they directly do such. If that's not a sign of intentional discrimination under the ADA in taking one's distinguishing character into account and then proceeding to beat, tase, pepper spray, hammer fist, I don't know what is. I'm a little confused here, counsel. As I understand it, there's no claim for wrongful arrest, correct? And the jury rejected any claim for use of excessive force? Yes. So um what's the what is this a property damage claim? About water damage to his prosthetic legs or what are we talking about with damages here? This is pain and suffering. They twisted his arm, he's been hammer fisted. So wait, wait, wait a second though. What happened? What what consequences are there from the excessive force verdict? There are no consequences from the excessive force verdict but this is a wholly separate claim. This stands different than the constitutional claim. So the theory is that what the police officers did would have been excessive force stands in a different realm in the constitutional realm and that they were the jury found they didn't commit excessive force. In the ADA, force by discrimination is need not be excessive to meet or break the standard of the ADA violation or make an ADA violation. Can you can you point us to cases that have found that police officers complied with the constitution in an arrest but violated the ADA? Your briefs talk a good deal about in essence inviting us to to weigh in on this larger abstract question about how the ADA applies to arrests. I guess the Fifth Circuit has said it does not and other circuits have indicated it may but as far as I can tell have not actually found an officer violated the ADA. Well in Sheehan they leave the door open. That's I understand the door is open but I'm looking for guidance as to what a case would look like in which an officer complied with the constitution but was found to have violated the ADA in treatment of somebody with disabilities in an arrest. I don't think I've found such a case but I really think that the constitutional analysis shouldn't get intertwined with the express statutory dictates of the ADA. Well how express are they is one of the questions but that's Go ahead. Could I could I pause you on that point? So it you'll you know of course that in Kane we assumed that the ADA Title II for shorthand applies to police encounters and we further assume that there's vicarious liability. If you set aside the assumption we I think it's settled in our case law we right or wrong our cases say that there's no individual liability under Title II. So can you can you walk me through the statutory argument? The vicarious liability? Right so why why under the language of 12132 Title II why is there vicarious liability? Okay so how do you get there? I don't think Gebser foreclosed vicarious liability. I'd like to start with the fact that Title II points back to the Rehab Act which points back to the Title VI remedies. When Gebser was decided they were deciding Title VI and Title IX. Title VI and IX are modeled after each other. Title II is not modeled after Title VI or Title IX. It's not cut from the same. It's not spending clause litigation either or legislation either. So what it just in the interest of time though set it set that aside. Sure. How do you get there statutorily? For the vicarious liability imposed here upon either the Allen County Sheriff in his official capacity or the Chief of the Fort Wayne Police Department. I don't think it's been foreclosed because it's not a remedy right or procedure and that's the only thing that we are looking to is a remedy right or procedure and then also that this plain language of the statute talks about it being an instrumentality. So I yeah I don't know. For my part the starting point has got to be what is the language of the statute and if you had a I'm going to I'm going to by analogy draw upon Monell. If you had a Monell like set of facts that the police department had a policy, there was a pattern in practice, there was inadequate training. I think you could get there under the language of 12132 but that's the way the case is presented. The case is presented in terms of two Fort Wayne police officers. You want to impute their actions to their employer and hold the employer liable. Okay my question is how do you get there legally when you don't have Monell a Monell like evidentiary showing? Okay well first let me say that two of the officers that were there under their facts one was a corporal of training and we don't think that you have to go all the way to the very top of the chain. One was a corporal in training, Corporal Lawhorn and another was a sergeant, Sergeant Griffin. So they could arguably be. The two officers that were involved in the in the encounter though were Miss Woods and Mr. Shuline. Correct but the officers that showed up during the legs not getting wet scene were higher level officers. But as far as your statutory question, I look at 12131 and it talks about other instrumentality of the state. Public entity means other instrumentality and we did cite case law for you that other instrumentality. Under section 12131 instrumentality. May I reserve the rest of my time or would you like further questions? Why don't you reserve and thank you. Thank you. Okay. Thank you. Good morning. Good morning, Mr. Good morning. I represent the city defendants and the county defendants on this appeal. Um, even though I said good morning, you might want to state your name. Oh, I'm sorry, Carolyn. Thank you. Sorry about that. So with respect to the claims under the ADA and the Rehabilitation Act, um, I cited a case from the Seventh Circuit Court of Appeals King versus Hendricks County Commissioner. And in that case, the Seventh Circuit assumed without citing that the ADA and the Rehabilitation Act applied to the officers interactions with the plaintiff in that case. And that case is pretty much on point with our case. In that case, the plaintiff suffered from paranoid schizophrenia. And on November 29, 2016, two reserve deputies went to the King's home to perform a welfare check after the plaintiff had called 911 requesting help. Mr. King walked outside of his house towards the reserve deputies and pulled out a 10-inch knife from his shorts pocket. The deputies yelled at him to stop and drop the knife. He disregarded their commands, kept moving forward, and he was shot and killed when he was approximately eight feet from the officers. The Seventh Circuit, uh, like Judge Lee in our case, granted summary judgment on the ADA claims and the Rehabilitation Act claims and stated that the record before us does not indicate that Hayes was deliberately indifferent to Bradley's disability and stated that there was no evidence that but for the alleged discrimination on the basis of his disability, Bradley would still be alive. And we have that same case here. There's been no evidence presented by the plaintiffs that but for the alleged discrimination on the basis of Carl Culp's disability, that Officer Shulian and Officer Woods would not have used the force that they did. There's no evidence in this case that the officers were deliberately indifferent to Mr. Culp's disability. When you look at Mr. Culp's deposition testimony, it, you know, this, they're claiming that this is a failure to accommodate his disability. When you look at his deposition testimony, there's not even any type of request to accommodate his disability. And in fact, it just shows his continued resistance and refusal to follow the officer's commands. I, I, what if, what if this did not occur? But, uh, what if, um, the Culp's had, uh, brought a case stating that, um, the officers, uh, should have been aware of his mental state? Where, where, where would we be then, do you think? Well, they were, the call was for a suicide threat and they were taking him in for a mental health check. And by statute, by the Indiana statute, it's the same as an arrest. They can use the same force under Indiana law, um, to arrest him. And so there were exigent circumstances in this case where he was not compliant. He, his wife could have driven off. He could have had a box cutter or weapons in the car. So really it's not even relevant in this case that he was his mental, I mean, they couldn't have treated him any differently. They had to get him out of the car. Mr. Chair, can I, can I pause you? Uh, can you, Judge Rovner, I think in my view, that's a really important question she's asked. Um, and can you just, can you step back from the fact pattern for a second? Yes. Okay. And it's very easy in a context like this to talk about, um, Mr. Culp being arrested. Mr. Culp was never arrested, right? This is not a legal matter when, when we're thinking about the application of the ADA to police encounters. What I'm hearing in Judge Rovner's question is does that context matter? Because there's no probable cause to believe that Mr. Culp committed X or Y crime. Okay. I understand your question. And that, the reason I'm asking that question is in our panel opinion in Kane, in Kane versus Hendricks County, the, the court identifies, you know, mental health intervention as possibly being a different context. Yes. Than a response to a call that somebody has committed a violent crime, for example. Yes. Well, they knew that Mr. Culp was suicidal. It was called in from his psychiatrist's office that he was suicidal. So they were well aware of that. Um, they tried to talk to him. They asked him to come back inside the medical building so that they could talk to him. Right. So now what you're doing is you're shifting to the facts and the evidence. My question is as a pure legal matter, does the con, forget the facts and evidence. Okay. Okay. If we have to answer the question that we haven't answered so far, would you tell us that the context of mental health intervention is legally relevant or legally irrelevant? Well, I think it's always going to be relevant. How? In that how they deal with a suspect or a person that is having a situation that is, has some type of mental health issue. Okay. Now translate that legally. So if we, if, if you had to write an opinion saying that the ADA applies to police encounters, I know that's not the outcome you're at. Okay. How would you articulate its legal relevance, mental health, vis-a-vis arrest, law enforcement? Well, I believe it's one factor that the police have to consider. I mean, it's hard for me not to go back to the facts because it is a factor. It's one factor to consider, but they also have to consider whether the person is a threat to himself, a threat to another person. I mean, officers are trained that suicidal people can be the most dangerous people because they'll take other people out with them. So they have to, that's one factor to consider in the analysis. But they still have to be, they have to help that person not harm himself. They have to watch out for their own safety. So it's one factor to consider in the legal analysis. Now, we didn't discuss this with, excuse me, this, Sirisi, but do you want to discuss the cross-appeal or not? Yes, I do. Would you like for me to do that now or at the end? Whatever suits you. Okay. I think I would like to discuss Mr. Culp's deposition testimony because it's highly relevant to the issue of whether there was any request for accommodation or if the officers even knew he needed an accommodation. As stated earlier, the officers saw Mr. Culp stand up out of his wheelchair, put on his prosthetic legs, stand up out of his wheelchair, put the wheelchair in the back of the car, walk along the passenger side and get into his car. So the officers had no idea whatsoever that he would not be able to stand up out of his car and he never articulated that to the officers. In addition, with respect to the prosthetic legs getting wet, Mr. Culp himself had already been out in the rain with his prosthetic legs before the officers even made contact with him. So even if the officers failed to accommodate that, his prosthetic legs had already gotten wet because of Mr. Culp's actions. There's a difference of being out of the rain, I mean in the rain, and, you know, on the ground in puddles for 20 minutes, is there not? Well, I think the officers did what was reasonable and what they could in order to keep this person from harming himself. And the fact that it was storming that day, I mean, there's not a lot that they could do about it and it happened outside. They did want Mr. Culp to come back inside the building and he refused to come back in. So, but Mr. Culp testified in his depositions that the testified that the officers wanted him to get out of his vehicle. He admitted that he refused to comply with the officer's request. He stated to the officers that he would like to see them try to remove him from the vehicle. He admitted that he removed his glasses and placed them on the passenger side of the dashboard. He admitted grabbing the steering wheel and was using his head against the b-pillar and his arm wrapped around the b-pillar on the outside of the car and he was holding on. He admitted that he specifically braced himself in the car and hung onto the steering wheel so the officers could not remove him. He admitted that he refused to get out of the vehicle. He refused, he admitted that if the officers told him he did not exit the vehicle, he would be tased. He admitted that the officers attempted to remove his left hand from the steering wheel. He admitted that he still grasped the steering wheel. Mrs. Culp testified that she to talk to you. Mrs. Culp heard Mr. Culp say to the officers no thank you. Mrs. Culp heard the officers keep saying we want you to get out of the vehicle, get out of the vehicle, we want to talk to you. Mrs. Culp testified her husband wouldn't get out of the vehicle and she even said why don't you get out of the vehicle. When you look at his admissions and his deposition testimony, he's not a man who's asking for accommodations from these officers. So even if the ADA and the Rehabilitation Act applied, there's no violations, there's no deliberate indifference to his needs, there's no failure to accommodate his request. Mr. Trier, could I ask you about a different kind of factual context? I've seen a number of cases where somebody who suffers from diabetes winds up, for example, behind the wheel of a car and is in insulin shock. They may behave in ways that make it appear similar to if they were intoxicated and that can lead to some very tough, sometimes violent encounters with police officers. Do you have any thoughts about how the ADA and or Fourth Amendment apply in that kind of a situation where the officer may or may not know about the reason for the behavior? Right. Well, as you know, under the Fourth Amendment, when you look at the totality of the circumstances, it's from the perspective of what the police officer sees and knows and not what he finds out after the incident. And they did know he was suicidal, which means he was a danger to himself and others and he could have been a danger to his wife. So I understand, you know, I've read the cases where, you know, somebody's having a diabetic insulin reaction and an officer might interpret that they are intoxicated. But I think that's just one factor that the officers look at and you have to base it on what they knew at the time. What these officers knew was that Mr. Culp was suicidal and the call had been from his psychiatrist office, not just a family member. To go back to a question that Judge Scudder was asking you a few minutes ago, I guess you were saying the officers here had legal authority that's in essence equivalent to arrest power, right? And the resistance here seems to have shifted things very, very quickly into the equivalent of a resistant arrest. Is that right? That's correct. Okay. Do you have any doubt that if officers violate the ADA or Rehab Act, their department would be the entity that would have to answer in damages if there are awardable damages? Well, I cited that case where the chief of police or the sheriff would have to have knowledge that it was taking place. Why isn't it just straight respondee and superior the way it is with an employment case? When would it be? Why is it not? Why is it not? Well, I think it should be more looked at the way a Monell claim is looked at. And why is that? Because there is no possibility of individual liability under these statutes, correct? That's correct. So that means as long as the senior officials are not aware, there's no accountability if lower level officers violate the law. Is that right? That would be my position. That would be what I would argue. Based on what in the statute? Oh, well, I would base it, the NASA should look more like a Monell claim. I know that's your conclusion. How do you get there from the statute? And a statute that would, under your theory, leave many violations beyond remedy? Yes. Well, I cited that case out of the Northern District of Illinois that said, in order to succeed on the ADA claim, the plaintiff must prove that an official who had authority to address the alleged discrimination. That agrees with your conclusion? Yes. Take me from the statute. How there would not be vicarious liability? Right. As there is in virtually every other area of American law except 1983. Right. I mean, I don't think the statute, it's kind of hard to prove, I mean, I don't think the statute supports the vicarious liability. Do you think it supports an award of damages? The statute? Yes. Okay, and no individual liability, so the only candidate is the city and the county. And where do we get this policy, custom, or widespread practice Monell standard out of the statute? How do we get it out of the statute? How do you? Well, I mean, I don't know that there's a case where there has been vicarious liability with respect to police officers. You're arguing more generally. Okay. That under Title II of the ADA, there's no individual liability and that institutional or enterprise liability should not be governed by respondeat superior but instead by a Monell-like standard. I'm asking you for some affirmative indication, statutory text, I'll even take legislative history if you've got it, okay, for working that standard rather than the kind of I mean, what Judge Hamilton is getting at is what the courts have struggled with. Yes, and obviously I'm struggling. Well, it requires an interpretation, does it not, of the language in the statute that Congress used about the denial of benefits, services, programs, or activities of a public entity or being subjected to discrimination by such entity. And so, what you have to answer is whether, as Judge Hamilton observes, the norm of being able to impute liability under principles of respondeat superior applies here or whether that language signals some different congressional intent. I mean, that's the question. Right. I mean, I would think it's a different congressional intent and that they didn't intend to allow there to be respondeat superior liability under the ADDA. And then the question is why? Because I don't see any language in the statute that supports that. Well, okay. So, let me give you an example. Suppose, for instance, that a police officer in the city of Fort Wayne acts directly contrary to a program that the department has in place through training to deal with mentally ill individuals that need emergency medical health treatment or assessment. And Officer John Doe just flagrantly violates that. Why isn't that the denial of the benefit of a program that the entity has in place such that the city of Fort Wayne or its police department could be held responsible under the statutory language? Why not? Well, in that scenario, I think there should be vicarious liability. If he flagrantly violates... Okay. So now we've identified a hypothetical where there may be vicarious liability. What's the legal principle for us as a court to determine when is there and when is there not? Okay. In your example, you said that there was a program of the municipality that he violated. Right. And the reason I made that hypothetical up is because I'm just looking at the statutory language. Right. And I think in that case, there is a program that the municipality has put in place and an officer violates their program and it violates the ADA or the Rehabilitation Act, there should be vicarious liability. And the reason I'm struggling with this is because there's no violation in our case, but I'm looking at your hypothetical and I think the statute would support vicarious liability. Right. And so we have to decide your case too and we will, but we've also got to be mindful of tomorrow's case and how to interpret the statute. Right. And we punted on it in Kane because it wasn't required to be resolved in Kane. And I guess, I mean, I haven't really studied that particular issue and such that I can give the greatest answer because in our case, I assume that the ADA applied, the Rehabilitation Act applied and vicarious liability applied, but even in all those, with all that application, assuming that application, there's no violation here. And I take it that you understand that what we are all trying to do here is to decide the enforcement context. Yes. Could I ask you a couple of questions about your cross-appeal? Yes. The plaintiffs have asserted that the district judge did not address several grounds they offered for denying costs in the case. So it sounds like, and I would be interested in your thoughts, that if we were to vacate the denial of costs, we would have to send this back for another round of litigation in the district court over these costs? Do I agree with that? Yes. No. Why not? Because, you know, first of all, the standard is abuse of discretion and Mr. Culp lost on every, brought seven claims against seven defendants. The plaintiffs have said they offered several reasons that the district court did not address. Wouldn't that we have to send it back for the district court to address those items? My position is I believe this court can reverse the district court without addressing those issues. I understand your position. Okay. Can I ask, how much do you think has been devoted in attorney's fees to these $10,000 in costs? What are my attorney fees? Devoted to that issue so far? I couldn't guess or speculate. I don't know. This case has been around for a few years. So how much of that, all the attorney fees were devoted to this issue? I do not know. The cost issue only arose after the final judgment. It's all the costs, all the costs attributable to your cross appeal. So, okay. All right. If you don't want to tell me, I'll leave it at that or you can't tell me. I just don't want to guess or speculate because I would just be pulling a number out of the air. Can the costs that are attributable to the claims of Carl Culp be separated from those as to Roberta Culp such that an award can be made of costs solely attributable to Carl's claims that would not have also been incurred with respect to Roberta's claims? Right. So in my, so as I stated in my affidavit, all of the, presented to the court, all of the costs that we incurred in this case were attributable to Mr. Culp. He claims substantial mental, emotional, financial damages from this case and collecting all of his medical records and employment records was a significant part of the cost. The depositions, I think there were seven or eight depositions taken in this case. The only, I took the deposition of Mrs. Culp, which I would have taken anyway because one, she was a witness to the incident. Two, she's married to Mr. Culp, so I wanted to know what his mental and emotional condition was before the incident and after the incident. And the only claim of hers that went to trial was the pepper spray that got on her and out of her 42-page deposition, only a half of her page was devoted to her claim. Would you agree that with Judge Dow's analysis in the Ellis case that an award of nominal damages does indicate, does make somebody a prevailing party for purposes of costs? Oh, I wouldn't agree with that because that was a Northern District case. It wouldn't be mine and in his opinion, I said... You want us to follow a lot of other district court opinions. I'm just asking about his analysis of our precedent. Well, in that case, the jury found that one officer used excessive force and the other officer didn't. Let me go back to my question. Do you agree or disagree? And if you disagree, why? That an award of nominal damages makes a party a prevailing party for purposes of costs. I cited a case in my brief, the Batts case, where the jury awarded $30,000 to the plaintiff, but they still awarded costs to the defendants and said the defendants were the prevailing party. So there's several cases that I have cited where there are more than nominal damages and the defendant was still determined to be the prevailing party for costs. Okay. Yeah, that's... Yeah, Batts is a Northern District of Indiana. Ellis is Northern District of Illinois. I'm asking for guidance on our law. Okay. I have a Seventh Circuit case. Okay. On nominal damages? Thank you. Well, I guess I cited the Rivera v. City of Chicago case, which is a Seventh Circuit decision regarding the claim that the cults were indigent. And in that case, they said they still awarded costs and considered indigency one factor to consider. So that was the Seventh Circuit case I cited. Okay. Thank you. Okay. Thank you. Thank you very much. Judge Skudder, to your point about the hypothetical, it's not so hypothetical in that Whitney Woods is a crisis intervention trained officer to come to these sort of events, and he did behave in the manner he did. So I think there is an issue there for potentially vicarious issues to flow through. As far as the mental health component of this, we view the mental health component as its own separate disability that should have been accommodated at the time through de-escalation, not taking such a hostile, angry manner. I think one of the important things to think about if you look at this scene, there was a mental health nurse while the officers were in the car with Carl that approached several times and said, can I help? Can I talk to him? And this is a mental health professional that was on the scene and offering assistance. And that sort of accommodation could have changed the course of events drastically, I think. So I think that accommodations... Hold on. Ms. Grassley stayed in the parking lot, didn't she? Ms. Grassley did, but this is a lady named Danette Quartz. And Danette Quartz is a lady that came to the car while he was in there after the taser was deployed and she said, can I talk to him? Can I talk to him? And she's a mental health nurse and she asked if she could call an ambulance. And then afterward, when he was laying on the ground, she came up again and said, can I help? Can I get him his wheelchair? And so she was offering the police officers ways to accommodate and she's a nurse there. Okay, great. That's wonderful that she was there. If you're in the police officer's shoes, you've got somebody who may well be a physical danger to himself and others. Do you allow a bystander to come in and try to help who might wind up getting hurt herself? Well, there's no allegation that he was a danger to others. The call that came out said that he had... They didn't know that at the time. They didn't know that. This woman could have been anyone. You can't just have stray people coming up saying, police, I am a mental health expert and I will help. You can't have that. She was in scrubs and the officers did direct her to call an ambulance. So anyway, I think there could have been minimal, reasonable accommodations that would have helped the mental health crisis from even escalating to the point that it did. And we would just respectfully request that you find that the ADA applies and there could be very vicarious liability. And as to the issue of the cost, that's a hard hurdle to overcome. There's a lot of discretion there that trial court judges have and the standards no reasonable fact finder would find differently. And I know in their case, they cited a case called Delta. But it also talks about a court may, when assessing costs, look at the party's prior conduct or misconduct. In this case, Fort Wayne was monetarily sanctioned during the discovery process for withholding non-complying with discovery. And they actually tried to include some of those costs with non-compliance with discovery in their bill of rights. I'm not going to be able to pull the record site, but it's in our argument. You see, again, the reason I asked my question earlier is because the, your argument has focused on his physical disability, not a need to accommodate mental health issues. Oh, we believe there was a need to accommodate mental health issues. I know, but that hasn't been that well, that really wasn't the thrust of your argument. Certainly in our allegations, talking about diffusing time in our complaint, the ability to diffuse time and call upon other trained officers to intervene and help, that was about the mental component. I'm sorry, I'm out of time. Don't be sorry. If you have anything to add, please do. I appreciate being here and I appreciate your thoughtful questions and we hope that you find the ADA applies and Mr. Polk has a claim. And we appreciate you. Thank you. And we also, of course, appreciate Ms. Trier and thank you. And the case will be taken under advisement. Thank you very much. We're going to go on.